UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

MARSHA RICHLER,

            Plaintiff,

    - against -

PFIZER INC.,

        Defendant.

-------------------------------------------------X

**JUDGE BATTS**

**07 CV 847**

07 Civ. (    )

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff Marsha Richler ("Richler" or "plaintiff"), through her attorneys, Vladeck,
Waldman, Elias & Engelhard, P.C., complains of defendant Pfizer Inc. ("Pfizer" or "defendant") as
follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action to remedy age discrimination in employment and
retaliation for opposition to unlawful employment actions, in violation of the Age Discrimination in
Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Executive
Law § 290 et seq. (the "Human Rights Law"); and the Administrative Code of the City of New
York § 8-101 et seq. ("City Law").

2.    Plaintiff seeks injunctive and declaratory relief, compensatory and punitive
damages, and other appropriate legal and equitable relief pursuant to the ADEA, the Human Rights
Law, and the City Law.



242091 v1

## JURISDICTION AND VENUE

3.     Plaintiff filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission (the "EEOC") on or about August 26, 2005, complaining of the acts of age discrimination and retaliation alleged herein.  On November 8, 2006, more than 60 days after the filing of plaintiff's EEOC charge, the EEOC issued a Notice of Right to Sue.  Plaintiff has complied fully with the administrative prerequisites of the ADEA.

4.     Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c) of the ADEA.  Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over plaintiff's claims brought under the Human Rights Law and the City Law.

6.     As the unlawful employment practices complained of herein occurred within the Southern District of New York, venue is proper within this District.

## PARTIES

7.     Plaintiff Marsha Richler was born on June 28, 1945.  She began her employment with defendant Pfizer Inc. in 1990 and worked full time for defendant until June 2005.

8.     Defendant Pfizer Inc. is a company that does business in the pharmaceutical, consumer and animal health industries.  Pfizer maintains an office in New York, New York and is an employer within the meaning of the ADEA, the Executive Law, and the City Law.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a 60-year-old woman.  She holds a Bachelor of Science degree in Psychology from the University of Dar es Salaam, Tanzania.

10.      In 1990, Richler joined Pfizer.  She began working for Pfizer at its Head Office in Montreal, Canada.  Richler was hired as Program Coordinator of Continuing Medical Education ("CME").  She was promoted in 1995 to Senior Program Coordinator of CME and then Manager, CME for the Anti-Infectives Group in 1996.

11.      In August 1998, Pfizer transferred Richler to its New York office.  With the help of Pfizer's Legal Department, Richler began the process of becoming an American citizen; in May 2005, Richler received her green card reflecting permanent resident status.

12.      Richler joined Pfizer's New York office as Manager for Professional Relations of the CME group in the Worldwide Marketing Division.  In this position, she was a liaison between the company's medical and marketing functions with respect to cardiovascular, metabolic, and endocrine therapies, and between Pfizer and physicians around the world in promoting those therapies.  The position of Manager for Professional Relations was equivalent to a Director level position.

13.      Throughout her employment with Pfizer, Richler received consistently positive performance evaluations, regular merit increases, and was given steadily increasing responsibility.

14.      In her review of Richler's performance for 2003, Richler's supervisor noted:

> Marsha has definitely been an asset in representing Pfizer [to the pharmaceutical industry]. . . . Her positive relationships with the

various associations are critical, especially in a year with as much uncertainty and disruptions as this past year." Her 2003 review added, "Her insights were critical. . . . Marsha takes a leadership role in meetings and decision-making. . . . She is a stable participant in many conference calls. . . . [S]he has brought [forward planning] issues to light . . . in the best possible way. . . . Marsha has definitely been an asset to the CVME Group during a time when we all struggled with integration issues and resource issues.

15.     Richler also received high marks from her peers outside of Pfizer who work in the pharmaceutical marketing field.  In late 2004, the 15-member Council of the International Pharmaceuticals Congress Advisory Association ("IPCAA") unanimously elected Richler to the position of IPCAA Vice President.

16.     In 2000, Pfizer began reducing the CME Professional Relations Group's staff.  Although the Group had previously been comprised of three people, by 2003 Richler had assumed all CME Professional Relations responsibilities.

17.     In the spring of 2003, Richler discussed with her supervisor the possibility of creating a Director-level position that would oversee the CME Professional Relations Group. Richler and her supervisor discussed the fact that Richler would be an ideal candidate to fill such a position.  In early 2004, Pfizer created such a position.  It did not, however, consider Richler for the position.  Instead, Pfizer hired Diane Krusko ("Krusko"), a woman in her late 40s, to oversee the Professional Relations Group and supervise Richler.  Krusko's position was assigned Director-level status.

18.     Almost immediately upon becoming Richler's supervisor, Krusko began to usurp Richler's job duties and to diminish her role in the Professional Relations Group.  Krusko scrutinized Richler's performance and routinely criticized her, sometimes in front of her

242091 v1                                                  4

colleagues.  On some occasions, Krusko was so abusive that Richler had to leave the room to compose herself.

19.    On February 16, 2004, Krusko gave Richler an extremely negative review and, together with Human Resources, placed Richler on a 90-day Performance Improvement Plan ("PIP").  In the review Krusko stated that Richler "could not adapt to the changes and evolving expectations of the business."  The PIP contained numerous factual inaccuracies and no objectively measurable goals.  Rather, Richler's success or failure under the PIP was left to Krusko's discretion.  Although Richler repeatedly asked Krusko for clearer instructions concerning the goals that Richler needed to meet in order to succeed under the PIP, she was never given this information.

20.    Richler wrote Krusko a memorandum protesting the PIP.  In that memorandum, Richler stated her belief that Krusko had placed her on the PIP because of her age.

21.    Throughout the PIP period, Richler complained repeatedly to Human Resources personnel about Krusko's age bias and animus toward her.  Richler also told Human Resources her belief that the PIP, because it contained no objective standards, was intended to make Richler fail.  Nevertheless, when Richler asked Human Resources for guidance on the objectives that she had to achieve to comply with the PIP, Human Resources referred Richler back to Krusko.

22.    Richler's fears increased when in March 2005, prior to a scheduled meeting with Krusko, the Human Resources Department sent her a "Pre-departure Exit Survey and Employee Separation Checklist."   When Richler called Pfizer's Human Resources

Department to ask why they had sent her these documents, Human Resources withdrew the documents.

23.     Pfizer's PIP policy states that employees subject to a PIP should be given a verbal warning and/or coaching prior to receiving a PIP, and a final warning if the performance of an employee has not improved after they have been given a PIP. Richler never received such feedback from Pfizer.

24.     On June 28, 2005, Richler sent a memorandum to Leighton Gleicher ("Gleicher") a Pfizer human resources professional, again expressing concern that Krusko was discriminating against Richler because of her age by unjustly criticizing Richler's performance in order to justify dismissing Richler. Later that day, which was Richler's 60th birthday, Pfizer fired her.

25.     The next day, Gail Triggs ("Triggs"), a Director in Pfizer's United States Medical Group, left a voicemail message for Krusko. In the message, Triggs expressed disapproval that the company had fired Richler on her 60th birthday. Triggs ended the message by inviting Krusko to talk further about the issue. Triggs had previously written a letter to Gleicher, which stated that she felt that Krusko was unjustly criticizing Richler.

26.     On July 20, 2005, Pfizer reprimanded Triggs in writing for allegedly "violat[ing] Pfizer's Policy Against Work-related Violence and Pfizer's value of Respect for People" in connection with the voicemail that she left for Krusko. The reprimand threatened Triggs with "further disciplinary action, up to and including termination of [her] employment with Pfizer."

242091 v1                                6

27.     Upon information and belief, plaintiff was replaced by a woman younger and less qualified than Richler.

## FIRST CLAIM FOR RELIEF

### (ADEA - DISCRIMINATION)

28.     Plaintiff repeats and realleges paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her age, in violation of the ADEA.

30.     Defendant knew that its actions constituted unlawful discrimination on the basis of age and/or showed reckless disregard for plaintiff's statutorily protected rights.  These violations were willful within the meaning of the ADEA.

31.     As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## SECOND CLAIM FOR RELIEF

### (ADEA - RETALIATION)

32.     Plaintiff repeats and realleges paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to its unlawful employment practices in violation of the ADEA.

242091 v1                                             7

34.     Defendant knew that its actions constituted unlawful retaliation or showed reckless disregard for plaintiff's statutorily protected rights. These violations are willful within the meaning of the ADEA.

35.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

THIRD CLAIM FOR RELIEF

(HUMAN RIGHTS LAW - DISCRIMINATION)

36.     Plaintiff repeats and realleges paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment based on her age, in violation of the Human Rights Law.

38.     Plaintiff is now suffering irreparable injury and monetary damages as a result of defendant's discriminatory conduct, and will continue to do so unless and until the Court grants relief.

FOURTH CLAIM FOR RELIEF

(HUMAN RIGHTS LAW - RETALIATION)

39.     Plaintiff repeats and realleges paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to its unlawful employment practices in violation of the Human Rights Law.

242091 v1                                          8

41.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

## FIFTH CLAIM FOR RELIEF

### (CITY LAW - DISCRIMINATION)

42.     Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment based on her age, in violation of the City Law.

44.     Defendant knew that its actions constituted unlawful discrimination on the basis of plaintiff's age and/or showed reckless disregard for plaintiff's statutorily protected rights.

45.     Plaintiff is now suffering irreparable injury and monetary damages as a result of defendant's discriminatory conduct, and will continue to do so unless and until the Court grants relief.

## SIXTH CLAIM FOR RELIEF

### (CITY LAW - RETALIATION)

46.     Plaintiff repeats and realleges paragraph 1 through 45 of this Complaint as if fully set forth herein.

47.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to its unlawful employment practices in violation of the City Law.

48.     Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

49.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment:

(a)     declaring the acts and practices complained of herein to be violations of the ADEA, the Human Rights Law, and the City Law;

(b)     enjoining and permanently restraining these violations of the ADEA, the Human Rights Law, and the City Law;

(c)     directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     directing defendant to hire plaintiff to the position she would have occupied but for defendant's discriminatory and unlawful conduct and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including but not limited to wages, pension, and other lost benefits;

(e)     directing defendant to pay plaintiff an additional amount as liquidated damages, as provided by Section 7(b) of the ADEA, 29 U.S.C. § 626(b);

(f)     directing defendant to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering and interest thereon;

(g)     directing defendant to pay an additional amount as punitive damages for its willful and/or reckless disregard of plaintiff's statutory rights;

(h)     awarding plaintiff such interest as is allowed by law;

242091 v1                                       10

(i)     awarding plaintiff her reasonable attorneys' fees and costs; and

(j)     granting such other and further relief as this Court deems necessary and

proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a

trial by jury in this action.


Dated:        New York, New York
              February 2, 2007


                         VLADECK, WALDMAN, ELIAS
                         & ENGELHARD, P.C.



              By:    _Anne C. Vladeck_____
                     Anne C. Vladeck (AV 4857)
                     Attorneys for Plaintiff
                     1501 Broadway, Suite 800
                     New York, New York  10036
                     (212) 403-7300


242091 v1                        11